The next case for argument is 19-1795, Apple v. ContentGuard. We're ready to proceed, counsel, when you are. Good morning, Your Honors. Jeff Cushion for Apple. The Board found that ContentGuard's original claims were anticipated and obvious, and ContentGuard has not appealed those determinations. In them, the Board found that the Stefik patent describes a meta-right called the Next Set of Rights, or NSOR. It also found that a skilled person would have recognized there are two plausible options as to when Stefik's NSOR may be exercised in relation to a usage right, namely at the same time or at a different time. The Board made that finding because it was considering whether the original claims were obvious, even assuming they required the meta-right to be exercised independently from the usage right as ContentGuard had contended. And what the Board found was that they were. It found that exercising the meta-right at a different time relative to when the usage right is exercised would have been one of two obvious options, and they cited the rationale of KSR. So the Board's findings on the original claims compelled the Board to find ContentGuard's new claim 37 obvious. It's the same obvious question. So the Board's failure to find that claim obvious requires reversal. Reversal is also appropriate because ContentGuard cannot now contest the Board's findings of fact, which compelled their obviousness conclusion. Again, they didn't appeal the Board's anticipation or obviousness determinations for the original claims. I note that if you reverse on obviousness as we're requesting, it's unnecessary to re-steal their patentability issues in this appeal. Now, there is another problem. The other error relates to the anticipation findings. And what the Board found there was that this new claim they presented in an amendment was not anticipated by STFIC. And, again, that can't be squared with what the Board's uncontested factual findings are. Claim 37 amends the original Claim 1 to add that exercising the meta-right does not result in action to content. Now, the ordinary meaning of result in is that it causes the action. And that's what the Board found when it found that exercising the NSOR in STFIC happens. It found that exercising the NSOR results in the addition, modification, or deletion of usage rights. And those are actions to usage rights, not actions to content. The 280 patent, which is the patent at issue, also says that the STFIC mechanism for exercising these rights can be used to practice its methods. It says, in fact, the same mechanism can be used for exercising both usage rights and meta-rights. And then it points directly to this same STFIC patent. And then in their motion to amend, ContentGuard pointed, again, to this STFIC mechanism for exercising rights as part of their written description support for this new Claim 37. So we believe all of this, that record, again, this result is essentially undisputed, compels the conclusion that STFIC also anticipates Claim 37. It describes exercising a meta-right, a mechanism that both ContentGuard and the 280 patent say can be used to practice that method. Let me ask you about that. Regarding STFIC, and now I'm talking about the amended claim issue, even if copying the content to a new repository happens before the usage rights attached to a file are modified, exercising the, what do we call it, NSOR, requires that there be some accompanying action to content. Isn't that right? Well, it doesn't. The way that the NSOR right is exercised, it occurs during a transaction where usage rights are also being exercised. And we note that in the red brief, ContentGuard has acknowledged that exercising the meta-right is not what causes the exercise of the usage right. This is at, I think it's at the red brief at 60 to 61. I'm sorry, at 56. And what they're noting is that it's kind of a non-issue. What the STFIC exercise of NSOR does, it's something which happens, as it's described in STFIC, as occurring kind of incidental or in the process of other events that are occurring. But you keep focusing on timing, right? And that's something other than the results in action to content. Well, the findings by the board were that when, and the only findings they made about the NSOR and what actions it affects are that it is affecting actions that relate to usage rights. So it's creating new usage rights or deleting them or modifying them. And it's relatively unsettled that the usage rights themselves, those are different rights. Those are things like authorization to play the content. And if you exercise that usage right, you can then play the content or you can copy the content. What the board found was that STFIC's NSOR system, NSOR when it's being exercised, is only shown as exercising effects on or having effects on the creation or modification of usage rights, not content. And so the fact that it's essentially contemporaneous within other transactions doesn't mean that the exercise of the NSOR is resulting in actions to content. Instead, it's the actions on the usage rights are resulting in actions on content. Let me ask you a couple of housekeeping-type questions. There are a lot of issues floating around here. Firstly, if we agree with the board that this is appropriately a CBM, we don't need to reach the issue of whether or not there is reviewability under Click-to-Call, correct? Yes, you're right. The question I think you've raised is, if you reach the conclusion that this wasn't properly found by the board to be a CBM patent, you don't need to resolve the question that's been raised by Thrive and the Click-to-Call decision. Right. And the answer is that's correct. We do not have to reach it. I believe that's correct. Okay, let me ask you another kind of in the weeds, more housekeeping thing. And that is the board's analysis of this 252 matter. And I know you asked that even if we affirm the case, that we vacate or reverse the board's suggestions under intervening rights under 252. Am I right about that? I think if you find that the claims are unpatentable as we're requesting you reverse on that ground, you don't need to reach the identical scope issue because it's essentially moot at that point. If the claim is invalid, it's not necessary to do that. No, but if in the alternative we were to agree with the board on the patentability of the amended claim, then you're asking that we nonetheless do or say something about 252. Am I right about that? You are correct. If you do reach the conclusion that the new claim is anticipated or not anticipated, then that actually compels you to address and reverse that finding that the claim scope is identical. Why? I mean, if our view is that what they said has no legal effect, then why would we be dealing with it at all? Are you concerned that it's going to be missed? If we agree with you that it's not correct, that it will hurt you later on in another proceeding? Well, it certainly could. It could be an issue that would affect a potential finding on intervening rights because the intervening rights inquiry in a future dispute would turn on whether the claims have the same scope or not. I think that's the main reason why the board is instructed to make a determination on identical scope when they consider a motion to amend. That's part of the function of that decision, is to have a clarity in the record about where the claims are relative to the original claims. I'm happy to reserve my time or I'm happy to take on any other questions you have regarding this. If you'd like to get into the details of the identical scope issue, I'm happy to do that as well. Judge Raynor, Judge Hughes, do you have any further questions? No, I did have a question, Judge Post, but you asked it for me, so I appreciate it. I don't have any questions. All right, so why don't you reserve the remainder of your time because we've got cross appeals here and so forth. And let's hear from the other side. Thank you. Thank you. Mr. Malone. Yes, good morning, Your Honor. May it please the court. I'd like to start with the jurisdictional issue of whether this is a CBM patent. The 280 patent is not a CBM patent. The challenge claims describe a method for creating and transferring a new right through the exercise of a meta right. The board asserted that it cannot be the case that the 280 patent may avoid being a CBM patent simply because it recites broad claims and discloses some embodiments that are non-financial. But that assertion reveals that the board not only applied the wrong test, but it fundamentally mischaracterized the claims. And what's our standard of review on whether or not the board erred in the CBM conclusion? Well, Your Honor, we believe that the board has used the wrong definition of a CBM once again. That issue, we believe, is an issue of law that is subject to de novo review. If the court concludes that the board did apply the correct definition, then we would alternatively assert that the board still should be reversed under a standard that its application of the definition to these claims is arbitrary and not supported by substantial evidence. And the reason is, Your Honor, because under the proper definition, we must focus on what the claims are directed to. And there's not a single claim in the 280 patent that is directed to a system or method for using the invention in a financial product or service. The claims cover a limitless number of non-financial embodiments. And that's because no claim requires any financial step or component. The only description of... This is Judge Reina. I find a strength in your arguments, both in your briefing that you're making today. But I'm bothered as to the impact that click-to-call Supreme Court's decision has on those arguments because at the end of the day, we're looking at the director's decision to institute. And it appears to me that our authority, this court's authority, over matters that pertain directly to the director's decision to institute are final and non-appealable. Can you quickly address this particular issue? Sure, Your Honor. As we indicated in our response to their citation of Thrive, we believe that the Versada decision applies to this court's Versada decision and that that holding in Versada, that CBM eligibility is a reviewable issue, is not implicated by Thrive. And the reason is, as Versada pointed out, the question of whether a patent is a CBM patent doesn't just go to the institution decision. It goes ultimately to the board's ultimate authority over the entire proceeding because the statute limits the board's jurisdiction on CBM proceedings to patents that... Can I just interrupt? Sorry, this is Judge Hughes. I get that and, you know, that's what Versada decided, but isn't that the argument that Click to Call directly rejected there when it said even if the director's institution authority was exercised outside the one-year statutory period, it was still non-reviewable? I mean, that reasoning, it seems to me, undermines your argument here about Versada and renders Versada just incorrect. And the fact that it was ultimately made, and the CBM determination was ultimately made in the final decision as well, was again rejected by Click to Call when it said even if it appears in the final decision, if it's an institution issue, it's not reviewable. I mean, how do you respond to those different places in Click to Call where it seems to reject the reasoning you're making relying on Versada? My response, Your Honor, is that it's not just a matter of the board having initially made a determination in the institution decision. In fact, we're here on a remand decision that differs substantially from the reasoning that was set forth in the institution decision. And that's because the issue ultimately depends on what a patent claims. And what a patent claims can evolve, that the issue, that issue can evolve during the proceedings based on claim construction most particularly. And so it's not until the final written decision, in this case, the amended remand decision, that we have a final determination by the board of what the claims cover and whether the claims are correct. I'm sorry. Can I just interrupt you again? I don't understand that argument at all. The same thing about evolving claim construction and the like can happen in a general run-of-the-mill IPR case where it gets instituted based upon certain claim constructions or not, and then they may change during the proceedings. I mean, if the board decides to institute based on a claim construction that changes, you don't get to go back and say they shouldn't have instituted because that claim construction was wrong. You just get to challenge the claim construction and how it relates to patentability, not to the institution decision itself. Why isn't that same argument here? You may get to challenge the claim constructions in terms of whether these are about financial things or not, but that goes to the ultimate patentability questions, not the initial CBM determination. Well, in the alternative, Your Honor, related to that point, I would say the decision of whether it's a CBM patent, which is based on the claims, doesn't just go to the ultimate patentability question. It goes to the board's ultimate jurisdiction over the entire proceeding. And what Cuozzo and Thrive say... So does timeliness. If the petition was untimely, then that goes to the authority of the board to have instituted in the first instance. How are the two different? Well, one way it's different, Your Honor, is explained in Thrive, is that the issue of... I'm sorry, I believe it was explained in Versada. The issue of timeliness only affects whether the petitioner was a proper petitioner. It doesn't go to the board's ultimate authority over the patent, and another petitioner that timely files a petition may still challenge the patent. I'm not sure that's what we said in Y-5-1. I think in Y-5-1, this court looked at the decision to institute in that situation, the timeliness situation, the time bar situation, to be one of the authority to even entertain the case. And I think the Supreme Court rejected that as well. Would you agree? Well, with the Supreme Court, what I would agree, Your Honor, is that the Supreme Court in Thrive focused on the time bar rule, and it noted that the time bar rule expressly governs institution and nothing more. It is a statute closely related to the institution decision and nothing more. Thrive also emphasized that a party dissatisfied with the final written decision may still appeal under Section 319, and it drew a distinction between decisions to institute and decisions that relate to the scope of the proceedings or other aspects of the proceedings that occur after institution. And our point is that in this case, the issue of whether the patent is a CBM patent goes beyond the mere institution decision to the board's ultimate authority and its ultimate jurisdiction over the proceeding. Sorry, this is Judge Hughes again. I still fail to understand how the C- I mean, you're arguing this authority argument. Let's just assume I disagree with you, and I think the Supreme Court rejected that distinction between authority and timeliness. I think that's wrong. How does the determination of whether a CBM, a patent is a CBM or not, go to the final merits of the patentability argument? I mean, isn't the statute that talks about this CBM determination? Doesn't it actually use the word institute and setting the standard of whether the board can institute on a CBM or not? Yes, I believe it does, Your Honor. And the difference, again, I believe, is that in his disclosal, which Thrive applies, pointed out that rule appeals from a final written decision under Section 319 are still available for circumstances where the board has exceeded its statutory jurisdiction. And our position is that the definition- Well, that's just-I mean, you're not being responsive to my question and my hypothetical, which is I asked you to assume that I disagree with that authority point, because I think Click to Call makes very clear that that's not the correct reading of CLOZO. So is there anything about the CBM determination, apart from the board's authority to institute, that is necessary for the final written decision on the merits of the patentability claim? Well, no. I guess to the extent I understand your question, the merits of the patentability claim depend on obviousness and anticipation and other issues that go beyond the issue of whether the claims recite a financial subject matter. So I don't see those two issues as being completely aligned. Did I answer your question, Your Honor? Yes, thanks. Well, before your time runs out, we've spent all of your time, largely because we've asked questions about the cross-appeal. Do you want to respond to Mr. Cushon's main arguments with respect to the patentability of the substitute claim? Sure. Thank you for that opportunity, Your Honor. On the anticipation question, the arguments they're making are really discredited by their own assertions in the petition and by their own expert. The question is not whether the reading of the NSOR parameter itself causes action to content. The amended claim requires the ability to exercise the meta right to create new rights without any action to content occurring. And their own expert and in their own petition, they analyzed STEFIC and affirmatively asserted that the relevant exercising step in STEFIC is the exercise of the usage right and the entire process involved with exercising the usage right. And as their expert states, the meta right is exercised in STEFIC by transmitting a copy of the work to the requesting repository. And that was the fundamental premise of their attack of the original Claim 1, which has now been amended in Claim 37 to clearly distinguish over that sort of an approach. As to obviousness, it's a very similar issue. They focused on timing. Your Honor asked a question about that. The question is not whether the NSOR parameter is exercised or processed at the same time or a different time as the content is transferred. The question is whether it can be exercised at all without resulting action to content. The only argument that was really put forth on obviousness was their assertion that the embed transaction disclosed in STEFIC could create new rights without transferring content. And the Board correctly found that that was just an incorrect reading of the embed transaction, which is clearly disclosed in STEFIC as a process that requires transferring the content from one repository as their own exercise. I have a remaining question, Judge Croce, if I may ask it. Yes, please. I wanted to ask counsel if he agrees that the patent owner, the reason that the negative limitation was added, it was with the purpose of overcoming the STEFIC rejection. Do you agree with that? I do agree with that, Your Honor. Okay. Before, I know your time has run out, but let me ask you one other question about Section 252 and what the Board did. Is it your view that the Board has the authority to tell district courts what their conclusion necessarily must be with regard to intervening rights? And is that what happened here? Your Honor, I wouldn't go so far as to say that what the Board determined is binding on a district court. I don't think we know the answer to that question yet. What the Board did here is in compliance with its own rules that in its practice guide state that parties may request such a finding, and if the Board believes it's appropriate, the Board will make such a finding. And that's all we did, and the Board followed its own rules and was clearly correct in its conclusion. I think that's the only issue that the Court has to address in this particular appeal on the 252. All right. We'll keep a couple minutes for rebuttal if it's necessary on your cross-appeal. And let's hear from Mr. Cushing. Thank you. Thank you. Thank you, Your Honors. On the CBM issue, I think the first thing, as Judge Hughes, you had articulated, the institution decision, we believe, under click-to-call is no longer a reviewable issue. There's no appellate jurisdiction for reviewing that question. What's notable about the CBM question is, is this 280 patent a CBM patent? The Act, the AIA Section 181AE, says that the director may institute a transitional proceeding only for a patent that is a covered business method patent. So the Act actually makes this explicitly part of the institution decision. So that question, I think, squarely is answered by click-to-call and says that that is part of the institution decision, whether this patent is a CBM patent or not. And that is no longer reviewable under the logic that's articulated in click-to-call. When does the CBM statutory provision expire? We're at the end of the road with the get to CBM, correct? Yes, and we're, I think it is imminent by September. Okay. The other issue I'd like to mention about what counsel had said about the merits of the CBM issue is that they didn't really contest that the board was following this court's law in their opening brief. And what they were really focusing on there is essentially disputing that the board applied that law wrong, and most specifically were challenging a number of factual findings the board made. And we believe that the factual findings that the board made on CBM eligibility are not to be disturbed, but they're supported by substantial evidence, and we believe your authority holds that. And they only raised kind of their new issue about the interpretation or the standards the board was using in their reply brief.  Now, on the issue that he just raised regarding anticipation, I think you just have to look at the claim language. The claim language does not read, exercise a meta right without any action to content occurring. That's their gloss on what they think that word means. What the claim language says is that the exercise, and this is what, I'll just read it, this is the language that was added to Claim 37, and wherein the meta right is not itself a usage right because exercising the meta right does not result in action to content. And that's what the board has held. I mean, when they read STEFIC and were understanding what it was describing, they found that when you exercise the NSOR, it changes usage rights. It doesn't cause copying or other things like that. Those things, like, those are usage rights, and so the actions of exercising the NSOR are affecting the usage rights. And I think that question of anticipation ultimately doesn't, even if you were not to agree, that's where you should come out on anticipation of new Claim 37. We raised in our petition, we raised during the briefing that this claim would have been obvious even if you had to independently exercise the meta right relative to the usage right. And we've addressed this in our briefing. In fact, the board recognized that's what our argument was. If you look at Appendix 55-56, you see them recounting our explanation of why the claims were obvious, and we gave them this explanation. There's just two options for how you exercise the meta right relative to the usage right. That's what they relied on, and they found it persuasive in finding the original claims obvious. So I'm available to answer any other questions, but I can rest at that point. Can you just talk to me for a minute? I know I'm hung up, obviously, probably the only person on this 252 question. Sure. And what your friend said, that the board's rules or their guidance or whatever it is, compels that they make this determination, and that therefore it might have some heft with regard to what the district court has to say with regard to intervening rights at some later time. So the problem with what the board did was they construed meta right when they took up the original claims, and their finding was that the specification explicitly defined meta right, and it was not the definition that was used in the district court in Texas. They made their own finding about what that term meant. And then when they came to this exercise of comparing the new claim to the old claim, they simply adopted, without any findings, the language used by the district court in Texas. And the problem with that is that once they had found on their own that the claim term meta right had been explicitly defined in the specification, that ended the matter. And, in fact, whether you're working under the broadest reasonable interpretation or if you're working under the district court standard, you get the same construction if the specification is explicitly defined a term. And that's really the root of the problem is that they, instead of finding something in the record and based on evidence that would compel them to narrow the meaning of meta right the way that Kontenkar was arguing, they had to go with what they already found, which was the explicit definition of the specification. And that's the root of the problem. That's why it was hard for us to process the conclusion they reached, which was given that explicit definition of meta right and that the claims, you know, had been found anticipated, the same claim which wasn't changed by that construction with no basis for changing that construction was found not anticipated. And that's really the root of the problem. Okay. Thank you very much. Let's hear from the other side, probably has a couple minutes, and it would be exclusively on the cross-appeal matters, if I'm correct. Yes. Thank you, Your Honor. Just getting back to this issue of reviewability, if I might. Again, the distinction that I see between the Clozo and the Thrive case and the situation before the court in this appeal is that the Supreme Court cases dealt with statutes that go to the adequacy of the petition. In Clozo, it was whether the petition was sufficiently particular. And, of course, in Thrive, it was the time bar provision. And in those situations, the question is in some way enlightened by the fact that a proper pleading, a proper petition, could have given the board authority over the proceeding. In other words, a more particular petition or a petition that wasn't time barred would have allowed the board to challenge that particular patent or to review the challenge to that patent. But in the CBM eligibility question, a proper petition could not cure the board's jurisdiction over the CBM patent if, in fact, the patent does not qualify as a CBM patent under the statutory definition. And I believe that is a very important distinction because it goes to the board's ultimate authority to entertain the proceeding at all, regardless of whether the petition argued it correctly or not or whether the issues evolved during the proceeding. It still gets back to the fundamental issue of whether it's a CBM patent. And if it isn't a CBM patent, then the board has no authority to invalidate the claims in a final written decision at all. And so that is a distinction that I would point out to why this issue is reviewable by the board. With regard to the other issues in terms of the board's analysis, we just reiterate, and it's pretty clearly set forth in our brief, that the board basically focused on the specification and did not find a single claim limitation or a single claim construction. Well, your time is up, but I also think you're trending on issues that were not necessarily across the field. In any event, we thank both parties. We appreciate that this is not normal proceedings, and we appreciate your indulgence in that regard, and the case is submitted. Thank you.